# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Wilson Sporting Goods Co.,<br><br>Plaintiff,<br><br>v.<br><br>MGBC, LLC d/b/a Gators Baseball Academy,<br><br>Defendant. | Civil Action No:<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

The Plaintiff, Wilson Sporting Goods Co. ("Wilson"), by and through its undersigned counsel, brings the following Complaint against MGBC, LLC, doing business as Gators Baseball Academy ("GBA") for breach of contract, anticipatory breach of contract and repudiation, and declaratory judgment.

## NATURE OF THE ACTION

1. This is an action for breach of contract, anticipatory breach of contract, and declaratory judgment against GBA.

2. Wilson and GBA entered into a Team Sports Endorsement Agreement (the "Agreement") on or around June 1, 2022.

3. The Agreement generally provides for Wilson to provide GBA with certain Wilson-branded baseball products, and to sell Wilson-branded baseball products to the GBA organization. In exchange, the Agreement requires GBA to exclusively use Wilson's products, not enter into any promotional or sales agreement with a competitor, and to use its best and most reasonable ability to promote the parties' relationship. The term of the Agreement is from January 1, 2023 through December 31, 2025, and Wilson has the option of renewing the Agreement for an additional two (2) years under the same terms and conditions.

4. This action arises out of GBA's failure to abide by the terms of the Agreement, GBA's statements that it does not intend to abide by the terms of the Agreement in the future, and GBA's purported, but ineffective, attempt to terminate the Agreement under circumstances where termination is not available under the Agreement.

## THE PARTIES

5. Wilson is a Delaware corporation with its principal place of business at 130 East Randolph Street, Suite 600, Chicago, Illinois 60601.

6. Upon information and belief, MGBC, LLC is a Missouri limited liability company, doing business as Gators Baseball Academy, with its principal place of business at 1047 E Highway N, Wentzville, MO 63385-5916.

## JURISDICTION AND VENUE

7. Wilson is headquartered in this judicial District. By entering into the Agreement with Wilson, GBA has directed its conduct at this judicial District, and has caused harm to Wilson in this District.

8. Under the terms of the Agreement, the parties agreed "[i]t is the mutual desire and understanding of the parties that the rights and obligations created hereby shall be construed in accordance with the law of the State of Illinois and this Agreement shall be deemed to have been executed at Chicago, Illinois."

9. The Illinois long-arm statute permits courts in the State of Illinois to exercise jurisdiction over a party, such as GBA, based on its making or performance of any contract or promise substantially connected with this State. 735 ILCS 5/2-209 (a)(7).

10. GBA is subject to personal jurisdiction within the State of Illinois for the additional reason that it operates a 6U through 18U baseball and softball club called the Illinois Gators within this state.

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because matter in controversy exceeds $75,000 in value, and the parties are citizens of different states.

12. This Court also has subject matter jurisdiction over Wilson's claim for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, which

allows federal courts to issue declaratory judgments in cases of actual controversy within their jurisdiction.

13. Venue is proper pursuant to 28 U.S.C. § 1391 because the Agreement is deemed to have been executed at Chicago, Illinois, within this judicial District, and because a substantial part of the events and omissions giving rise to Wilson's breach of contract claim occurred in this judicial District.

## FACTUAL ALLEGATIONS

### Terms of the Agreement and GBA's Obligation of Exclusivity

14. In or around June 2022, Wilson and GBA entered into the Agreement.

15. The Agreement has an effective date of June 1, 2022, and a three-year term from January 1, 2023 through December 31, 2025.

16. The Agreement also provides Wilson the unilateral option to renew the Agreement for an additional two (2) years under the same terms and conditions.

17. Under the Agreement, Wilson agrees, among other things, to provide GBA with certain baseball equipment at no charge, and to give GBA and its membership access to premier Wilson family branded products at discount pricing during the term of the Agreement.

18. The Agreement also provides that, in certain instances, Wilson will provide GBA with preferred access to products, pricing, promotions, as well as certain cash or product rebates during the Agreement's term.

19. Wilson paid GBA a one-time merchandise signing bonus upon execution of the Agreement.

20. Wilson also offered incentives to GBA based on sales volume benchmarks.

21. GBA's obligations under the Agreement include, among other things, purchasing its baseball products exclusively from the Wilson Baseball family of brands, promoting the Wilson Baseball family of brands to members of its organization, and various other promotional activities.

22. GBA also agreed that it will not enter into any promotional or sales agreement with a competitor of the Wilson brands during the Agreement's term, and that it will not participate in consultation, field testing, or product testing for any other competing baseball equipment or apparel manufacturer or brand.

23. The Agreement recognizes that the exclusive use requirement is "paramount to the partnership and of a unique and extraordinary value to Wilson."

24. If GBA performed its obligations, Wilson estimates it would generate at least $1.2 million in sales during the remaining term of the Agreement.

**GBA's Breach of the Agreement**

25. Wilson made significant investments in its relationship with GBA, including in the form of free or discounted baseball products.

26. The Agreement provides that Wilson shall be the exclusive supplier of baseball equipment to the GBA organization.

27. Around April 4, 2024, Wilson became aware of GBA's intention to move from purchasing Wilson's baseball equipment to purchasing from a third-party competitor.

28. In response, Wilson informed GBA that purchasing baseball equipment from another supplier would be a breach of the Agreement.

29. GBA responded that "[it] is our intention to move on."

30. On or around April 8, 2024, Chris Cradick, President of GBA, sent Wilson an email purporting to provide 30-day written notice to terminate the Agreement.

31. However, the Agreement does not provide GBA with the right to unilaterally terminate in the manner, or under the circumstances Mr. Cradick described.

32. Wilson subsequently became aware that, upon information and belief, GBA had already executed an agreement with a third-party to supply GBA with baseball equipment, in breach of GBA's Agreement with Wilson.

### **GBA Declined to Mediate with Wilson**

33. The Agreement provides that the parties shall attempt to resolve all disputes arising under the Agreement by submitting themselves, prior to the filing of any court documents, to a face-to-face non-binding mediation process held in Chicago, Illinois.

34. Seeking an amicable resolution to the present dispute, Wilson requested that GBA participate in the mediation process required under the Agreement.

35. GBA declined to participate in the mediation process, without providing any justification.

36. Having been unable to reach an amicable resolution, Wilson is left with no choice but to pursue legal action.

### **GBA's Actions Have Damaged Wilson**

37. GBA's actions have damaged Wilson, and will continue to damage Wilson, unless GBA is ordered to specifically perform its obligations under the Agreement.

38. Wilson has been harmed, and will continue to be harmed, for example, by losing at least $1.2 million in sales over the remaining term of the Agreement.

39. Additionally, Wilson may suffer a multiple of $1.2 million in damages based on the loss of GBA's promotional activities, and the resulting reputational harm to Wilson.

40. Wilson is further forced to spend time and resources bringing this action because GBA refused to attend mediation, as the parties had agreed they would do. Wilson is entitled to be compensated for the time and resources spent pursuing this action, because they are a direct consequence of GBA's refusal to mediate as required by the Agreement.

**COUNT I – Breach of Contract**

41. Wilson incorporates paragraphs 1 through 40 as if fully set forth herein.

42. The Agreement is a valid and enforceable contract between Wilson and GBA.

43. At all times, Wilson has performed, or substantially performed, its obligations under the Agreement.

44. GBA has failed to perform its obligations under the Agreement and has therefore materially breached the Agreement.

45. Among other examples, GBA has breached the Agreement by purchasing and agreeing to purchase baseball equipment from a third-party competitor, in disregard of its exclusivity obligation under the Agreement.

46. The Agreement recognizes that the exclusive use requirement "is paramount to the partnership and of a unique and extraordinary value to Wilson." GBA's breach of the exclusivity obligation has caused resultant damage to Wilson.

47. GBA's actions have damaged Wilson. But for GBA's unlawful conduct, Wilson would generate at least $1.2 million in sales over the remaining term of the Agreement. Moreover, Wilson will suffer a multiple of $1.2 million in damages based on the loss of GBA's promotional activities, and the resulting reputational harm to Wilson. Wilson is also entitled to be compensated for the time and resources spent pursuing this action, because they are a direct consequence of GBA's refusal to mediate as required by the Agreement.

48. The exact amount of damages to Wilson will be determined at trial in this action.

**COUNT II – Anticipatory Breach of Contract and Repudiation**

49. Wilson incorporates paragraphs 1 through 48 as if fully set forth herein.

50. The Agreement is a valid and enforceable contract between Wilson and GBA.

51. At all times, Wilson has performed, or substantially performed, its obligations under the Agreement.

52. GBA has anticipatorily breached, or repudiated, the Agreement by clearly and unequivocally manifesting its intent not to perform on its contractual duty.

53. GBA clearly and unequivocally manifested its intent not to be bound by the Agreement in its written communications to Wilson, for example, by stating that "[it] is our intention to move on," and by attempting to terminate the Agreement under circumstances where it has no right to terminate.

54. GBA also clearly and unequivocally manifested its intention to repudiate the Agreement through its actions, such as dealing with competing third-party suppliers despite being bound by the Agreement's exclusivity requirement.

55. The Agreement recognizes that the exclusive use requirement "is paramount to the partnership and of a unique and extraordinary value to Wilson." GBA's breach of the exclusivity obligation has caused resultant damage to Wilson.

56. GBA's actions have damaged Wilson. But for GBA's unlawful conduct, Wilson would generate at least $1.2 million in sales over the remaining term of the Agreement. Moreover, Wilson will suffer a multiple of $1.2 million in damages based on the loss of GBA's promotional activities, and the resulting reputational harm to Wilson. Wilson is also entitled to be compensated for the time and resources spent pursuing this action, because they are a direct consequence of GBA's refusal to mediate as required by the Agreement.

57. The exact amount of damages to Wilson will be determined at trial in this action.

**COUNT III – Declaratory Judgment for Enforcement of Contract**

58. Wilson incorporates paragraphs 1 through 57 as if fully set forth herein.

59. Wilson is entitled to a declaratory judgment declaring the Agreement to be valid and enforceable.

60. GBA created an actual and immediate case or controversy by stating its intention not to be bound by the Agreement, and by purporting to terminate the Agreement under circumstances where it has no right to terminate.

61. GBA's stated intention not to be bound by the Agreement, and its purported termination of the Agreement, have caused harm to Wilson.

62. Accordingly, there is an actual and immediate case or controversy between Wilson and GBA, who have adverse legal interest, within the meaning of the Declaratory Judgement Act and Art. III of the U.S. Constitution.

63. Wilson is entitled to a declaratory judgment that the Agreement is valid and enforceable, and that GBA's purported termination is ineffective.

64. GBA's actions have damaged Wilson. But for GBA's unlawful conduct, Wilson would generate at least $1.2 million in sales over the remaining term of the Agreement. Moreover, Wilson will suffer a multiple of $1.2 million in damages based on the loss of GBA's promotional activities, and the resulting reputational

harm to Wilson. Wilson is also entitled to be compensated for the time and resources spent pursuing this action, because they are a direct consequence of GBA's refusal to mediate as required by the Agreement.

65. The exact amount of damages to Wilson will be determined at trial in this action.

## JURY DEMAND

Wilson hereby demands and request a jury trial on all issues that are triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Wilson Sporting Goods Co. prays this Honorable Court to:

a. Enter judgement in favor of Wilson and against GBA on all counts, in the amount of Wilson's actual and estimated losses, plus all fees, costs, and interest that Wilson has incurred or will incur;

b. Enter judgment declaring the Agreement to be valid and enforceable;

c. Order specific performance requiring GBA to abide by the Agreement;

d. Grant all additional relief available by law; and

e. Grant all additional relief as this Court deems appropriate.

Dated: September 16, 2024          Respectfully submitted,

/s/ *Oliver D Yang*

Oliver D Yang

**YANG LAW, LLC**
311 South Wacker Drive, Suite 2470
Chicago, Illinois 60606
(t): 312-377-3234
(e): ody@yang.law

Rhea J. Torman
**TORMAN DUNCAN LAW, PLLC**
Phone: (312).725.0404
Email: rtorman@rjtdlaw.com

*__Attorneys for Plaintiff Wilson Sporting Goods Co.__*